UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 1:12-CR-0268 |
| | : |
| MICHAEL MORRIS, | : |
| Defendant | : |

*M E M O R A N D U M*

*I.    Introduction*

We are considering a *pro se* motion filed by Defendant, Michael Morris, pursuant to 28 U.S.C. § 2255.  (Doc. 165).  In a two-count indictment returned on October 17, 2012, Defendant was charged with one count of conspiracy to distribute powder cocaine and crack cocaine, in violation of 21 U.S.C. § 846, and one count of distribution of powder cocaine and crack cocaine, in violation of 21 U.S.C. § 841.[1]  (Doc. 1).  Following a three-day jury trial in May 2013, Defendant was convicted on both counts.  (Doc. 101).  As part of its guilty verdict, the jury found that Defendant conspired to distribute, and did distribute, more than 28 grams, but less than 280 grams, of crack cocaine.  (Id.).  We subsequently sentenced Defendant to 262 months" imprisonment on each count, with the sentences to run concurrently.  (Doc. 127).  In his § 2255 motion, Defendant seeks to vacate his conviction and sentence, claiming that he received ineffective assistance from

---

1. Our use of the word "distribute" refers to both the distribution and possession with intent to distribute.  See 21 U.S.C. § 841(a)(1).

his trial counsel and that the Government engaged in prosecutorial misconduct. (Doc. 165). For the reasons discussed below, we will deny Defendant's motion.

*II.     Discussion*

*A.  Standard of Review*

Under 28 U.S.C. § 2255, a federal prisoner may file a motion challenging his conviction or sentence as being in violation of the federal Constitution or federal law. See Massey v. United States, 581 F.3d 172, 174 (3d Cir. 2009) ("A motion to vacate sentence pursuant to 28 U.S.C. § 2255 is the means to collaterally challenge a federal conviction or sentence"). See also 28 U.S.C. § 2255(a) (providing that a defendant can challenge the conviction, in part, "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States"). A motion for § 2255 relief cannot rest upon vague and conclusory allegations. United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (vague and conclusory allegations are insufficient for a section 2255 motion); Johnson v. United States, 294 F. App'x 709, 710 (3d Cir. 2008). A district court may dispose of such allegations without further investigation. Thomas, 221 F.3d at 437.

*B.  Ineffective Assistance of Counsel*

The Sixth Amendment guarantees federal criminal defendants the right to effective assistance of trial counsel. U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."); McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (stating that "the right to counsel is the right to the effective assistance of counsel"). For a defendant to establish that his trial counsel provided constitutionally ineffective assistance, he must satisfy the two-prong standard set out in Strickland v. Washington. Pursuant to this standard, the defendant

must first show that counsel"s representation was deficient. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). This requires showing that "counsel"s representation fell below an objective standard of reasonableness" under "prevailing professional norms." <u>Id.</u> at 688. If the defendant satisfies the first prong, then he "must show that the deficient performance prejudiced the defense." <u>Id.</u> That is, "the defendant must show that there is a reasonable probability that, but for counsel"s unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. Here, Defendant raises numerous arguments in an attempt to meet this standard. We address each argument below but find that none satisfy both prongs.

*1. Motion for Judgment of Acquittal*

First, Defendant argues that his trial counsel was ineffective because he failed to file a motion for judgment of acquittal. (Doc. 165 at 4). According to Defendant, the Government failed to prove the conspiracy charge contained in Count One of the indictment. (<u>Id.</u>).

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). When evaluating whether the evidence is sufficient, we ask whether any rational juror could have found the essential elements of the crime beyond a reasonable doubt. <u>United States v. Caraballo-Rodriguez</u>, 726 F.3d 418, 430 (3d Cir. 2013). To make this determination, we consider the evidence as a whole, "view the evidence in the light most favorable to the verdict, and . . . presume that the jury has properly carried out its functions of evaluating credibility of witnesses, finding the facts, and drawing justifiable inferences." <u>United States v. Coleman</u>, 811 F.2d 804,

3

807 (3d Cir. 1987). Only when the jury's verdict "fall[s] below the threshold of bare rationality," is a motion for judgment of acquittal granted. Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012).

Conspiracy to distribute cocaine has three essential elements: (1) an agreement between two or more people to distribute cocaine; (2) the defendant was a party to or a member of the agreement; and (3) the defendant joined or participated in the conspiracy knowing its objective was to distribute cocaine and intending to achieve that objective. See THIRD CIR. MODEL CRIM. JURY INSTRUCTION § 6.21.846B (2015). Proof of each element does not require direct evidence. Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184 (3d Cir. 2009). Rather, the existence of a conspiracy may be, and often is, inferred from the circumstances. Id.

Here, the Government presented evidence at trial of two cocaine transactions which were relevant to the conspiracy charge against Defendant – one on November 4, 2010 and one on December 10, 2010. Starting with the November 4, 2010 transaction, the evidence at trial established following. A confidential informant working with the Dauphin County Drug Task Force contacted Corry Matthews, a co-defendant, to purchase crack cocaine. (Doc. 131 at 38). Matthews, with nothing to sell, called co-defendant Dawan Maynard to acquire the crack cocaine on behalf of the informant. (Id. at 128). Maynard instructed Matthews to meet him in the area of 13th and Brady Streets in Harrisburg City. (Id. at 128, 142). Maynard arrived at the meeting location in a cab, which was driven by Defendant, and exchanged half an ounce of crack cocaine for $650. (Id. at 140-41). This transaction and the operative details thereof were testified to by law enforcement officers who conducted surveillance on the transaction and by co-defendant

Corry Matthews. (Id. at 34, 77, 101). Their testimony in turn was corroborated by telephonic recordings and 11.4 grams of crack cocaine seized from the informant. In addition to the details of the November 4, 2010 transaction, Matthews also testified that, based on his prior experiences, Maynard and Defendant routinely worked together to sell cocaine. (Id. at 123-25, 143, 184-85).

With respect to the December 10, 2010 transaction, the evidence at trial established the following. A confidential informant working with the Dauphin County Drug Task Force contacted Dawan Maynard to purchase two ounces of crack cocaine. (Doc. 132 at 77). The informant and Maynard agreed to meet in the area of Boas Street in Harrisburg City, where the informant would pay Maynard $2,000 in return for the crack cocaine. (Id. at 80-81). The informant traveled to the meeting location and found Maynard waiting in a cab driven by Defendant. (Id. at 81). Shortly after the informant entered the cab to conduct the pre-planned drug transaction, Maynard called a co-conspirator, Eric Prather, to instruct him to deliver the crack cocaine to the cab. (Id. at 83). Prather informed Maynard that law enforcement officers were in the area. (Id. at 83, 152). The presence of law enforcement startled Defendant. (Id. at 83). He ordered the informant out of the cab, and he and Maynard drove away from Boas Street at a high rate of speed.[2] (Id.). This transaction and its details were testified to by law enforcement officers who conducted surveillance, the confidential informant, and Prather. Their testimony was in turn corroborated by telephonic recordings and video footage.

---

2. A few hours later, Maynard provided Prather with a different substance and instructed him to consummate the transaction with the confidential informant. The substance Prather sold to the informant was later determined to be fake crack cocaine, likely candle wax.

Viewing the evidence related to these transactions as a whole, a rational juror could find each element of conspiracy beyond a reasonable doubt. Evidence that is particularly telling includes: (1) Defendant"s presence as Maynard"s cab driver at multiple cocaine transactions; (2) Matthew"s testimony that Defendant and Maynard routinely worked together to sell cocaine; and (3) Defendant"s reaction when he learned that law enforcement was in the area of the December 10, 2010, transaction. Together, this evidence allows a rational juror to infer that multiple people entered into an agreement to distribute cocaine, Defendant was part of that agreement, and Defendant participated knowing the objective was to distribute cocaine and intending to achieve that result. Because the jury"s verdict did not fall below the threshold of bare rationality, a motion for judgment of acquittal filed by Defendant"s trial counsel would not have been successful. Accordingly, counsel"s failure to file such a motion was not objectively unreasonable.[3]

---

3. We appointed counsel to represent Defendant at an evidentiary hearing on Ground Two of his § 2255 motion. At the hearing, counsel sought, and was granted, permission to file a brief in support of Ground One. In the brief, instead of addressing Defendant"s original argument, counsel added a new one. As discussed in greater detail below, see infra Part II.B.3., following trial, there was some indication that the jury included powder cocaine in its calculation of the weight of crack cocaine distributed by Defendant. Counsel"s new argument is that by filing a motion to amend the verdict instead of a motion for judgment of acquittal, Defendant"s trial counsel was ineffective because neither we nor the Third Circuit were called upon to address the substance of the weight determination. (Doc. 174 at 5). Assuming the new argument is not time-barred, which we doubt, our finding that there was sufficient evidence to support the jury"s conspiracy verdict renders it unavailing. Pursuant to United States v. U.S. Gypsum Co., 333 U.S. 364, 393 (1948), see infra Part II.B.4, the acts of various members of a conspiracy are admissible as the acts of all co-conspirators in aid of the conspiracy. The jurors in Defendant"s trial were instructed on this rule during our charge to the jury. (Doc. 130 at 95-96). Thus, the jury was permitted to find that Defendant, as a member of the conspiracy, distributed, or possessed with the intent to distribute, the same amount of crack cocaine as his co-conspirators. Because the evidence at trial indicated that Dawan Maynard distributed, or possessed with the intent to distribute, 11.4 grams on November 4, 2010 and two ounces (56 grams) on December 10, 2010, a rational juror could have found that Defendant, himself, distributed, or possessed with the intent to distribute, between 28 and 280 grams of crack cocaine. Accordingly, trial counsel"s failure to file a motion for judgment of acquittal on this theory was likewise not objectively unreasonable.

6

Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").

### 2. Rejected Plea Offer

Next, Defendant argues that his trial counsel provided ineffective assistance by advising him to reject a plea offer. (Doc. 165 at 5). According to Defendant, the Government offered to recommend a twenty year sentence in exchange for a "guilty plea without a proffer." (Id.). He claims that he rejected the offer because his trial counsel advised him that he was "better off going to trial." (Id.). Now he argues that he would have accepted the offer had he known that the offered sentence was less than the sentence he faced if convicted at trial. (Id.).

We held an evidentiary hearing on Defendant's allegations, which revealed the following facts. The Government made Defendant one plea offer. See (Doc. 167-1). Pursuant to the proposed agreement, Defendant would plead guilty to conspiracy to distribute powder cocaine and crack cocaine, and the Government would dismiss the remaining count of the indictment. The agreement required Defendant to cooperate with the Government by providing information concerning unlawful activities of others. (Doc. 167-1 at 9). While it did not provide for a specific sentence, the agreement did provide that the Government, upon Defendant's acceptance of responsibility, would recommend a three level reduction in Defendant's criminal offense level and recommend the minimum prison term within the applicable guideline range. (Doc. 167-1 at 6). The minimum prison term within Defendant's applicable guideline range was 262 months.[4]

---

4. Because he is a career offender, Defendant's criminal offense level was thirty-seven and his criminal history category was six. U.S. Sentencing Guidelines Manual § 4B1.1 (2015). Under this offense level and criminal history category, Defendant's sentencing guideline range was 360 months to life. U.S. Sentencing Guidelines Manual, ch. 5, pt. A, sentencing table. With a three

7

According to Defendant, his trial counsel advised him to reject the plea offer because he would receive essentially the same sentence if convicted at trial. Therefore, he was "better off" attempting to obtain an acquittal at trial. The advice that the potential sentences were essentially the same, if given,[5] was not accurate. If convicted at trial, Defendant was exposed to a prison term of 360 months to life. See supra note 3. Defendant testified that had he known that the potential sentence he faced if convicted at trial was greater than 262 months, he would have accepted the plea agreement. Thus, Defendant claims that his trial counsel provided ineffective assistance by advising him to go to trial based on inaccurate information.

As Defendant suggests, the Sixth Amendment right to effective assistance of counsel does extend to the plea-bargaining process. See Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). Where counsel's deficient advice[6] leads to the rejection of a plea offer, the prejudice prong under Strickland is satisfied if the defendant shows that, but for the deficient advise, there was (1) a reasonable probability that the plea offer would have been accepted, (2) the court would have accepted the plea terms, and (3) the resulting conviction or sentence would have been less severe than the judgment and sentence actually imposed. Id.

---

level reduction in the offense level for acceptance of responsibility, Defendant's guideline range was 262 to 327 months. Id.

5. Defendant's trial counsel denies instructing Defendant that the potential sentence under the plea agreement and the potential sentence if convicted at trial were essentially the same. Counsel testified that he discussed with Defendant whether there was a substantive difference between the two potential sentences considering Defendant's age and life expectancy.

6. We make no determination concerning whether trial counsel's advice was deficient, but simply assume for the sake of discussing the prejudice prong that it was.

Here, despite his bald assertion to the contrary, Defendant has failed to show that he would have accepted the plea offer. The proposed plea agreement was contingent upon Defendant's cooperation with the Government. Both Defendant and his trial counsel testified that Defendant was not willing to cooperate with the Government. Therefore, we find that Defendant has failed to establish that he would have accepted the plea agreement but for his counsel's advice. United States v. Seeley, 574 F. App'x 75, 80 (3d Cir. 2014) (holding that since counsel testified that defendant "never gave any indication that she was interested in cooperating with the government," defendant failed to prove she would have accepted plea agreement). Accordingly, Defendant has failed to show that he was prejudiced by counsel's advice to reject the plea offer.

*3. Jury Instructions*

Next, Defendant argues that counsel provided ineffective assistance because he failed to object to the Government's jury instructions and failed to issue his own jury instructions. (Doc. 165 at 6). Defendant's argument centers on the weight of crack cocaine that the jury determined he distributed. (Id.). After the jury was excused, one juror informed the court that when determining the weight of crack cocaine, the jury considered the evidence of both the powder cocaine and crack cocaine. See (Doc. 86 at 2). Upon notification, Defendant, through counsel, filed a motion to amend the verdict. (Id.). We denied the motion, and the Third Circuit subsequently affirmed. (Doc. 104; Doc. 161). Defendant argues that his counsel's failure to object to the Government's jury instructions and failure to issue his own jury instructions caused confusion among the jurors. (Doc. 165 at 7). As a result, the jury wrongly concluded that Defendant distributed

more than twenty-eight grams of crack cocaine, which subjected Defendant to a higher sentencing range. (Id.).

It is unclear to us whether Defendant is complaining about counsel's failure to object to the actual jury instructions given by the court or whether he is complaining about counsel's failure to object to the proposed instructions submitted by the Government. Regardless, both arguments lack merit. With respect to the former, it is the province of the court, not counsel, to instruct the jury on the applicable law. FED. R. CRIM. P. 30. Our instructions during Defendant's trial, and more specifically our instructions on the weight determination, were a near verbatim recitation of the model jury instructions published by the Third Circuit. Compare (Doc. 130 at 105-107) with THIRD CIR. MODEL CRIM. JURY INSTRUCTION § 6.21.841C (2015). Accordingly, it was not objectively unreasonable for trial counsel to fail to object to the court's jury instructions and fail to issue his own instructions.

As to the latter, if Defendant is arguing that his trial counsel was ineffective by not objecting to the Government's proposed jury instructions and by failing to issue his own proposed instructions, the argument is belied by the record. Defendant's counsel did file his own proposed instructions, and those instructions contained objections to the Government's proposed instructions. (Doc. 81). Notably, on page fourteen of the proposed instructions, Defendant's counsel wrote, "Morris concurs in the ninth proposed jury instructions offered by the Government with some exceptions." (Doc. 81 at 14) (emphasis added). His counsel goes on to argue the following: "when discussing the „quantity of cocaine base which was possessed with intent to distribute or distributed,‟ in each instance, the instruction should also indicate „by Morris or by others involved in a

conspiracy of which Morris was a part."" (Id.) (emphasis added). Thus, Defendant's claim is baseless.

### 4. Motion for Severance

Next, Defendant argues that counsel was ineffective because he failed to file a motion for severance. (Doc. 165 at 8). Defendant claims that because his trial was not severed from co-defendant Dawan Maynard's trial, he was wrongly convicted of conspiracy and the jury made the wrong crack cocaine weight determination. (Id.).

Federal Rule of Criminal Procedure 14 allows a district court, in its sound discretion, to sever a joint trial, or grant other appropriate relief, if the trial appears to prejudice the defendant or the government. FED. R. CRIM. P. 14. A defendant who seeks to sever pursuant to Rule 14, however, bears a heavy burden. United States v. Urban, 404 F.3d 754, 775 (3d Cir. 2005). It is a "fundamental principle that the federal system prefers 'joint trials of defendants who are indicted together' because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" Urban, 404 F.3d at 775 (quoting Zafiro v. United States, 506 U.S. 534, 537 (1993)). This is particularly true when jointly-indicted defendants are charged with a single conspiracy. In such cases, joint trials "aid the finder of fact in determining the full extent of the conspiracy and prevent the tactical disadvantage to the government from disclosure of its case." United States v. Voigt, 89 F.3d 1050, 1094 (3d Cir. 1996). For this reason, only if the defendant can "pinpoint clear and substantial prejudice resulting in an unfair trial" will a court grant a motion to sever. United States v. Riley, 621 F.3d 312, 335 (3d Cir. 2010). This requires the defendant to show that the jury would be unable to

compartmentalize the evidence as it relates to separate defendants. United States v. Davis, 397 F.3d 173, 182 (3d Cir. 2005).

Here, Defendant falls far short of clearing this high bar. Defendant and Maynard were charged in the same indictment for engaging in the same conspiracy. The Government"s evidence in support of the conspiracy charge was the same for both defendants – the drug transactions that occurred on November 4, 2010 and December 10, 2010, wherein Maynard exchange cocaine for money and Defendant drove the cab. Moreover, pursuant to United States v. U.S. Gypsum Co., the acts of various members of a conspiracy are admissible as the acts of all co-conspirators in aid of the conspiracy. United States v. U.S. Gypsum Co., 333 U.S. 364, 393 (1948). Thus, the same evidence applied to, and was admissible for, both defendants. Meaning, there was no evidence for the jurors to compartmentalize. That is, even if Defendant"s trial was severed, the same evidence could have been presented against Defendant at that trial. Therefore, Defendant would not have been able to pinpoint the clear and substantial prejudice necessary for this court to grant a severance motion. Accordingly, counsel"s failure to file a motion for severance did not amount to deficient representation. Werts, 228 F.3d at 203 ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").

### 5. Consultations

Next, Defendant claims that his counsel provided ineffective assistance by: (1) concurring with the Government"s motion to amend the indictment without consulting him first; and (2) not consulting him prior to, or having him present for, the "jury instruction conference."[7]  (Doc. 165 at 9). We address each in turn.

---

7. For both of these arguments, Defendant fails to allege what, if any, prejudice he suffered. Ordinarily, we would give Defendant an opportunity to amend his motion in order to show the

The language in the original indictment charged Defendant with conspiring to distribute and distributing "more than five hundred grams of cocaine base and cocaine." (Doc. 1). On April 30, 2013, the Government, with the concurrence of Defendant"s counsel, filed an unopposed motion to amend/correct the indictment, which we subsequently granted. (Doc. 68; Doc. 69). The motion and order clarified that the "five-hundred grams" referenced in the indictment spoke to the amount of cocaine base, not powder cocaine, that Defendant was charged with distributing. (Doc. 68).

As the Government"s motion pointed out, (Doc. 68 at 2), a district court may amend an indictment without resubmission to the grand jury when the change is merely a matter of form rather than substance. <u>Russell v. United States</u>, 369 U.S. 749, 770 (1962). Here, the Government"s motion did not seek to make substantive alterations to the indictment. To the contrary, it simply put Defendant on notice that the language of the original indictment charged him with distributing more than 280 grams of crack cocaine, and therefore, pursuant to 21 U.S.C. § 841(b)(1)(A)(iii), he faced a mandatory minimum sentence of ten years" imprisonment and a maximum sentence of life imprisonment, if convicted.[8] (Doc. 68 at 2). Thus, we would have granted the Government"s motion irrespective of counsel"s concurrence. Accordingly, Defendant cannot show that the outcome of this case would have been different had his counsel not concurred in the Government"s motion.

---

requisite prejudice. Because our discussion below reveals that the arguments are meritless, we find that granting Defendant an opportunity to amend his motion is futile.

8. Defendant claims that the Government"s motion amended the amount of crack cocaine he was charged with distributing from 500 grams to 280 grams. (Doc. 165 at 8). He misreads the motion. It did not seek to amend the amount of crack cocaine <u>to</u> 280 grams; it sought to clarify that the amount of crack cocaine Defendant was charged with distributing <u>exceeded</u> 280 grams.

Defendant"s argument that his counsel was ineffective by failing to consult him prior to, or have him present for, the jury instruction conference is equally unavailing. First, as discussed above, our instructions to the jury were drawn directly from the model instructions published by the Third Circuit. Thus, Defendant is similarly unable to establish that our instructions and the outcome of his trial would have been different but for counsel"s failure to consult him. Second, Defendant"s absence from the jury instruction conference was beyond his counsel"s control. The court, not counsel, determines who is permitted to participate in jury instruction conferences. It is our practice to prohibit criminal defendants from participating, especially those represented by counsel. Accordingly, Defendant"s argument is meritless.

*C. Prosecutorial Misconduct*

In his final two claims, Defendant asserts that: (1) the Government engaged in prosecutorial misconduct; and (2) his counsel provided ineffective assistance by failing to object to the misconduct. (Doc. 165 at 9). The claims are premised on the testimony of Detective Cory Dickerson and the testimony of a confidential informant, both of whom were Government witnesses at Defendant"s trial.

Detective Corey Dickerson of the Dauphin County Drug Task Force testified that on April 3, 2012, Defendant sold powder cocaine to an informant inside Central Penn Fitness Center in Susquehanna Township, Dauphin County. (Doc. 132 at 259). Relevant to Defendant"s claims, Dickerson testified that after the drug transaction was completed, the informant remained inside the fitness center, allowing Dickerson to recover the purchased cocaine before the informant left the building. (Doc. 132 at 264). Defendant argues that Dickerson"s testimony was perjured because video evidence introduced by the

14

Government showed that the informant did leave the fitness center before Dickerson recovered the purchased cocaine.  See Gov't Ex. 19.

The testimony of the confidential informant related to Defendant's involvement in the crack cocaine transaction that took place on December 10, 2010. Specifically, the confidential informant testified that Defendant was the driver of the cab during the transaction. (Doc. 132 at 82-84). Defendant argues that this testimony was also perjured. According to Defendant, the testimony was inconsistent with police reports, which indicated that the confidential informant initially identified someone else as the driver of the cab.

On this foundation of alleged perjury, Defendant constructs his claims. He asserts that by allowing Dickerson and the confidential informant to provide perjured testimony, and by failing to correct or notify the court of its falsity, the Government engaged in prosecutorial misconduct. Moreover, he claims that his counsel's failure to object to the Government's use of perjured testimony amounts to ineffective assistance.

Defendant is correct to suggest that prosecutorial misconduct occurs if the prosecution's case includes perjured testimony, and the prosecution knew, or should have known, of the perjury. United States v. Agurs, 427 U.S. 97 (1976). If a conviction is obtained by the knowing use of perjured testimony, the conviction is fundamentally unfair, and it "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Id. at 103. "The same is true when the government, although not soliciting false evidence, allows it to go uncorrected when it appears at trial." United States v. Biberfeld, 957 F.2d 98, 102 (3d Cir. 1992). Nonetheless, we find that Defendant's allegations of perjury are unfounded.

"A witness testifying under oath or affirmation [commits perjury] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or fault memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993) ("This federal definition of perjury by a witness has remained unchanged in its material respects for over a century."). It is not enough that there are mere inconsistencies in the testimony or that the testimony is challenged by another witness. United States v. Jackson, 192 F. App"x 96, 99 (3d Cir. 2006); United States v. Mangiardi, 173 F. Supp. 2d 292, 307 (M.D. Pa. 2001) (McClure, J.).

Here, the record shows that Dickerson"s testimony was the result of faulty memory, not willful intent to provide false testimony. Indeed, the day after Dickerson first testified, the Government recalled him to correct the inconsistency between his testimony and the video evidence. (Doc. 130). Upon being recalled, Dickerson explained that his prior testimony was inaccurate because his memory was "hazy."[9] (Id. at 5-6). Similarly, even if we assume that the confidential informant"s testimony was contradicted by the police report, this alone is simply an inconsistency – which makes it fodder for impeachment but insufficient to draw an inference of perjury. Mangiardi, 173 F. Supp. 2d at 307. Because the testimony in question was not perjured, Defendant"s claims that the Government knowingly used and failed to correct perjured testimony, and that his counsel failed to object to prosecutorial misconduct, must fail.

III.     *Conclusion*

For the reasons discussed above, we will issue an order denying Defendant"s § 2255 motion. The order will also deny a certificate of appealability, based

---

9. Even if Dickerson"s initial testimony was perjured, the fact that the Government recalled him to correct the inaccuracies rebuts Defendant"s argument that the Government allowed, or failed to correct, Dickerson"s testimony.

on the analysis in this memorandum.  Defendant is advised, however, that he has the right for sixty (60) days to appeal our order dismissing his motion, see 28 U.S.C. § 2253(a), and that our denial of a certificate of appealability does not prevent him from doing so, so long as he also seeks a certificate of appealability from the court of appeals.  See Fed. R. App. P. 22.

    /s/ William W. Caldwell
William W. Caldwell
United States District Judge